## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHARLES LEACH, individually and on behalf of others similarly situated, | Case No. |
| Plaintiff, | |
| vs. | **CLASS ACTION** |
| HONEYWELL INTERNATIONAL INC., a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Charles Leach ("Plaintiff") brings this action against Honeywell International Inc. ("Defendant" or "Honeywell"), by and through his attorneys, individually and behalf of all others similarly situated, and alleges as follows:

### INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiff on behalf of himself and a Class of individuals and entities who own or have owned homes or other residential buildings or structures in which Honeywell TrueSTEAM humidifiers, model numbers HM506, HM509, and/or HM512 (collectively, "Honeywell Humidifiers"), are or have been installed.

2.     Honeywell Humidifiers are marketed as providing "whole home humidification," and are touted as "providing the high performance and efficiency of steam humidification with easier maintenance than traditional humidifiers."

3.     Despite such claims, however, Honeywell Humidifiers are unreliable, difficult to maintain, and wholly defective.  Within a short time, the inside of the units become caked with

scaling and mineral deposits that can cause, among other things, overheating, blockages which can result in overflow of scalding water, and cracking of components.  As a result of the defective design and manufacture of Honeywell Humidifiers, Plaintiff and members of the Classes have suffered property damage and been forced to repair or replace their Honeywell Humidifiers.

4.     Plaintiff seeks to recover, for himself and the Classes, the costs of removing and replacing the defective humidifiers, consequential damages that resulted from the failure of Defendant's defective humidifiers, and injunctive relief.

## PARTIES

5.     At all relevant times, Plaintiff and class representative Charles Leach was a citizen of Massachusetts, residing in Pembroke, Massachusetts.  During the relevant class period, Mr. Leach owned a Honeywell TrueSTEAM HM506 humidifier, which is the subject of this Complaint.

6.     Honeywell is a Fortune 100 company that develops and manufactures a vast array of technologies, including various products designed for use in homes by individual consumers. Honeywell is a Delaware corporation, with its principal place of business in Morris Township, New Jersey.

7.     Honeywell designed, manufactured, warranted, advertised, and sold the defective humidifiers that were installed in Plaintiff's home and the homes of thousands of putative Class members in Massachusetts and throughout the United States.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiff and Defendant are of diverse citizenship and, upon information

and belief, the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, a substantial part of the property that is the subject of this action is situated, and Defendant is subject to personal jurisdiction in, this district.

10.     As a result of Defendant designing, manufacturing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, Honeywell Humidifiers throughout Massachusetts, Defendant obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

11.     Defendant conducted systematic and continuous business activities in and throughout the state of Massachusetts and otherwise intentionally availed itself of the market in Massachusetts through the promotion and marketing of its products.

## FACTUAL ALLEGATIONS

12.     Upon information and belief, Defendant is, and at all relevant times was, engaged in the business of designing, developing, manufacturing, distributing, marketing, and selling Honeywell TrueSTEAM humidifiers.

13.     Defendant manufactures at least three models of Honeywell Humidifiers for use in homes up to 3,000 square feet:  HM506, which delivers up to 6 gallons of moisture into the air each day; HM509, which delivers up to 9 gallons of moisture into the air each day; and HM512, which delivers up to 12 gallons of moisture into the air each day.

14.     Consumers often purchase more than one unit for homes larger than 3,000 square feet.

15.     The list price for the HM506 starts at approximately $792, and the cost of the 12-gallon unit exceeds $1000, which does not include the time and expense of installation.

16.     Upon information and belief, Defendant's defective humidifiers have been available for purchase since approximately 2008.

17.     Upon information and belief, from the introduction of Defendant's TrueSTEAM humidifiers in 2008 through the end of 2013, Honeywell sold 206,410 TrueSTEAM Humidifiers nationwide.

**A.     Defendant Represented That its Humidifiers Had a Number of Benefits but the Humidifiers Were Defective**

18.     Defendant touts its TrueSTEAM Humidifiers as providing the high performance and efficiency of steam humidification with easier maintenance than traditional humidifiers.

19.     Defendant's website describes its Honeywell Humidifiers as having, among others, the following qualities and benefits:

- **Moisture on Demand** - TrueSTEAM works by producing its own steam independent of equipment operation, so your home gets moisture when you need it most.
- **Eco-Friendly** – TrueSTEAM is the most eco-friendly way to humidify your home, because for every 1 gallon of water used, 1 gallon of humidification is produced.
- **"True Steam"** – While other humidifiers rely on moisture-filled pads that can be susceptible to bacteria growth in the water and the airstream, TrueSTEAM delivers "true steam" – the cleanest form of humidification.
- **Out of Sight, Out of Mind** – TrueSTEAM is installed out-of-sight by your heating and cooling professional into your home's central heating and cooling system.  You can forget about having to fill clunky, portable units, because TrueSTEAM automatically fills itself.
- **Whole-House Solution** – Installs directly or remotely into your furnace to deliver moisture throughout your entire home.
- **Minimal Maintenance** – Simply clean once a year with soap and water and the rest of the time it cleans itself automatically.

20.     The homeowner's operating manual, likewise, describes Defendant's Honeywell Humidifiers as "provid[ing] the highest capacity and most efficient steam humidification for whole-house residential applications," and boasts the following among its many features:   (1) LED light feedback allows you to monitor performance, giving you total control and peace of mind; (2) TrueSTEAM provides your home with high-capacity true humidity, while using up to 70% less water than flow-through humidifiers; (3) snap-lock latch allows for quick, easy maintenance; (4) the patented Condensate Collect Dome and beveled nozzle keep water in the tank, delivering only true steam into your duct's airflow; (5) wiring to your HVAC equipment allows TrueSTEAM to supply humidity when you need it by turning on your equipment automatically; (6) automatically fills with water and drains when needed, so you don't have to remember to do it; and (7) sediment screen keeps the tank clean for a longer period of time, reducing maintenance and ensuring optimum performance.

21.     Defendant's descriptions and representations about the quality and characteristics of its Honeywell Humidifiers are not qualified or in any way limited to use of the units with a particular water quality or type or use under any other particular conditions.

22.     Contrary to such descriptions, however, Defendant's Honeywell Humidifiers are plagued by design flaws.

23.     As illustrated in the photograph below, the inside of these defective units, including the heating coil and various other components, is prone to scaling and the buildup of mineral deposits after only a very short time.



24.     Such scaling can cause, among other things, overheating, blockages, and cracking of components.  Blockages, in turn, prevent the units from draining properly and can cause overflow of scalding hot water, even when the LED screen reports that it is empty.  According to the homeowner's operating manual, the water temperature within the units exceeds 140 degrees Fahrenheit.

25.     In addition to blockages within the units themselves, the buildup of sediment also can cause clogging of exterior drains, resulting in flooding. Moreover, the design of Honeywell Humidifiers results in steam being blown into the HVAC duct system, causing condensation to collect inside the ducts which, in turn, can lead to mold and fungus growth that can affect air quality, as well as corrosion of the duct work itself.

26.     Because of their defective design and manufacture, Honeywell Humidifiers are inherently defective and are substantially certain to fail within the express warranty provided by Defendant and/or the useful life of the units.

27.     Due to the poor quality of the manufacturing and the inability of the devices to prevent mineral buildup, customers are forced to repair and/or replace their units and/or component parts, often multiple times.

28.     These defective units often result in damage to surrounding appliances and property.

29.     Despite customer complaints, Defendant has failed to implement any changes to the design or manufacture of its Honeywell Humidifiers or to the warranty procedures it employs to remedy the defects.

**B.     Defendant's Warranty Misconduct**

30.     Defendant provides a 5-year limited warranty on its Honeywell Humidifiers, which provides, in relevant part:

> Honeywell warrants this product to be free from defects in the workmanship or materials, under normal use and service, for a period of five (5) years from the date of purchase by the consumer.  If at any time during the warranty period the product is determined to be defective or malfunctions, Honeywell shall repair or replace it (at Honeywell's option).

31.     The warranty applies to all Honeywell Humidifiers under normal use, and is in no way limited to use with a particular filter or certain water type or quality.

32.     Defendant established a warranty period to be advertised and guaranteed for Honeywell Humidifiers without conducting appropriate testing to determine if the warranty period was supported by actual or simulated use.

33.     Defendant warrants Honeywell Humidifiers for five years despite knowledge that they routinely fail well in advance of the expiration of such period.

34.     Defendant further has no intention of providing, and does not provide, the services set forth in their warranty.

35.     Despite receiving notice of the deficiencies described herein and routinely being notified by customers that their Honeywell Humidifiers are defective and not functioning as advertised, Defendant maintains an overly burdensome warranty claims process that is designed to, and does, deter customers from making claims under their warranties.

36.     Additionally, upon information and belief, Defendant routinely denies the remedy of repair or replacement to members of the Classes.

37.     When Defendant does repair or replace a defective unit in accordance with its warranty, Defendant routinely declines to reimburse customers for all damage caused by the defective unit – including any water damage resulting from overflow of the unit – and/or all expenses, including the cost of labor, incurred in repairing or replacing the unit.

38.     Defendant's warranty also states that:

HONEYWELL SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE OF ANY KIND, INCLUDING ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING, DIRECTLY OR INDIRECTLY, FROM ANY BREACH OF ANY WARRANTY, EXPRESS OR IMPLIED, OR ANY OTHER FAILURE OF THIS PRODUCT. Some states do not allow the exclusion of limitation of incidental or consequential damages, so this limitation may not apply to you.

39.     Defendant routinely disclaims liability for incidental and consequential damages, including but not limited to the cost of installing a new humidifier.

40.     The limited remedy to repair or replacement fails of its essential purpose because Defendant is unable to cure the defects by repeated attempts to repair or replace their Honeywell Humidifiers. Indeed, Defendant's replacement remedy is futile because it provides for installation of the same defectively designed humidifiers that are prone to the problems complained of by Plaintiff and members of the Classes.

41.   Defendant limits the duration of any implied warranties to the duration of the express warranty with the following language:

> THIS WARRANTY IS THE ONLY EXPRESS WARRANTY HONEYWELL MAKES ON THIS PRODUCT. THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, IS HEREBY LIMITED TO THE FIVE-YEAR DURATION OF THIS WARRANTY. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

42.   The limited remedies under the warranty, as described above, fail of their essential purpose because Defendant's Honeywell Humidifiers contained defective heating coils and other component parts that were defective at the time Plaintiff and members of the Classes acquired their Humidifiers, and because Defendant knew, or reasonably should have known, that the heating coils and other component parts were defective, but failed to inform consumers about the defects and instead continued to represent that Honeywell Humidifiers were free of defects.

43.   The limited remedies under the warranty, as described above, fail of their essential purpose because Plaintiff and members of the Classes had no ability to detect the defect in Defendant's Honeywell Humidifiers and had no notice of the defect.   Accordingly, the bargaining power between the parties was grossly unequal and the warranty limitations rendered the warranty substantially one-sided and, in turn, unconscionable.

## C.   Inadequate Testing of Honeywell Humidifiers

44.   Upon information and belief, Defendant did not test the units in their anticipated environments before selling Honeywell Humidifiers to the public.

45.   Upon information and belief, Defendant failed to test the units under conditions that they knew or should have known would lead to premature failure of the units and their component parts.

46. Upon information and belief, Defendant failed to adequately test whether continued use with well-known and expected water conditions would lead to premature failure of the units and their component parts.

**D.   False Advertising of Honeywell Humidifiers**

47. Defendant advertised, marketed, promoted, asserted, and represented that Honeywell Humidifiers are reliable and easy to maintain, despite failing to test and determine the reliability of its product when used in the real world.

48. Specifically, on its website and in its literature, Defendant promised that Honeywell Humidifiers provide the "most efficient steam humidification for whole-house residential applications;" "allow[] for quick, easy maintenance;" contain a sediment screen that "keeps the tank clean for a longer period of time, reducing maintenance and ensuring optimum performance;" provide the "cleanest form of humidification;" provide "the most eco-friendly way to humidify your home;" are so easy to maintain that they need only be cleaned once a year with soap and water and the rest of the time they clean themselves; and generally allow purchasers to "increase comfort, save energy and protect [their] home."

49. Defendant knew or should have known that such representations were false and misleading and that Honeywell Humidifiers were defective and would not function as promised.

50. Defendant also falsely represented that it would stand behind its warranties when, in fact, it routinely refuses legitimate claims expressly covered by its warranties.

51. Defendant made such assertions, statements, representations and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install Honeywell Humidifiers in homes and residential structures.

52.     Plaintiff and other members of the Class relied on such misrepresentations in deciding to purchase and/or install Honeywell Humidifiers instead of other brands or models available on the market.

53.     Defendant also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability, and performance of its defective humidifiers.  In particular, Defendant has knowingly and intentionally concealed from and failed to disclose to consumers that – notwithstanding statements on its website, advertisements and warranties – Honeywell Humidifiers routinely fail far in advance of the expiration of their warranty as a result of scaling and mineral deposits that may cause overheating, blockages, overflow, and cracking of components.

54.     Had Defendant not withheld and omitted important information about the design, reliability, and performance of Honeywell Humidifiers, Plaintiff and the members of the Class would not have purchased and/or installed them in their homes.

**E.     Improper Reliance on Installers**

55.     Defendant requires that the "TrueSTEAM must be installed by an HVAC Professional Installer."

56.     Defendant further relies on such installers to assess water quality and hardness and make a determination about appropriate filtration.

57.     While Defendant manufactures and sells its Honeywell Humidifiers for use with any type or quality of water, Defendant acknowledges in its Professional Installation Guide that "[f]ailure to address water quality can potentially lead to drastically increased maintenance requirements and premature failure of the TrueSTEAM humidifier and its components."

58.    Defendant, however, neither defines "HVAC Professional Installer," approves or provides a list of authorized HVAC Professional Installers, nor trains HVAC Professional Installers on installation of TrueSTEAM units.

59.    Nevertheless, Defendant relies on such undefined and unapproved installers to make assessments that Defendant is aware and admits may result in premature failure of the Honeywell Humidifiers.

60.    Moreover, Defendant fails to disclose to consumers in the Homeowner's Operating Manual or any other documentation or materials that the Honeywell Humidifiers are subject to premature failure, and further fails to inform consumers of any installation requirements related to water type or quality, filtration, or otherwise.

**F.    Failure of Plaintiff Charles Leach's Honeywell Humidifier**

61.    In or around March 2013, Plaintiff installed a 6-gallon Honeywell TrueSTEAM Humidifier, Model number HM506, which is backed by a five year warranty.

62.    The Humidifier was installed in a bathroom on the second-floor of Plaintiff's home.  Plaintiff intended to install a second Honeywell Humidifier, Model number HM506, in the basement of his home.

63.    Plaintiff chose this particular brand and model of humidifier because of the representations made by Honeywell with respect to the quality of the humidifier and the warranty with which it is advertised.

64.    At the time of purchase, Defendant represented, marketed and created the expectation that Honeywell Humidifiers would last for at least five years.

65.     Almost immediately after installation, Plaintiff's humidifier began to leak. Plaintiff has been forced to keep a towel on the tile floor of the bathroom to absorb the excess moisture from the leak, and to replace the wet towel with a dry towel each day.

66.     As a result of such leaking, Plaintiff chose not to install a second Honeywell Humidifier in his basement.

67.     On or shortly before March 31, 2014, Plaintiff inspected his Honeywell Humidifier and saw that the heating coils were caked with mineral deposits despite having continually used a water filtration system since installation. Plaintiff cleaned the heating coils, yet his Honeywell Humidifier continued to leak.

68.     On or about March 31, 2014, Plaintiff notified Defendant that his humidifier was defective.  In response, Defendant denied Plaintiff's claim, suggested that the gasket was likely the cause of the problem, and advised Plaintiff that he should hire a professional, at his own expense, to examine and service the humidifier.  Honeywell refused to send Plaintiff a new gasket, replace the unit with a new one, or pay for the cost of servicing the defective unit.

69.     The problems associated with Plaintiff's defective Honeywell Humidifier have continued. On or about May 13, 2014, only a short while after cleaning his heating coils, they were once again caked with mineral deposits as illustrated in the below photograph:



70.     Plaintiff's expectations that his humidifier would perform as promised were reasonably formed based on Honeywell's marketing and warranty of Honeywell Humidifiers.

71.     Plaintiff would not have purchased the Honeywell Humidifier and/or would have purchased a different product had he known that his humidifier would fail well before the end of the warranty period and not perform as promised.

**G.     Experiences of Class Members**

72.     Plaintiff's experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of similar failures of their Honeywell Humidifiers. The following represents a small sampling of internet postings by customers describing their experiences with the defective units:

> I bought this unit on the advice of my HVAC man in 2008. To be fair, and this is
> the only good thing I will say about this unit, it does a good job of humidifying

the house - WHEN IT WORKS! The damn thing is made of plastic and is CONSTANTLY splitting (water tank) and or cracking (senders) after every heating season. Something is always broken on this piece of s _ _ t. I have had 2 brand new units replace successive faulty units but they all end up falling apart again. What the hell was Honeywell thinking of when they made this thing out of plastic?

. . . My advice to anyone thinking about buying the Honeywell Truesteam - STAY THE HELL AWAY FROM IT!  (Nov. 3, 2012)

* * *

This is the worst purchase I have ever made. Neve[r] has worked right. Have replace the entire unit and it still doesn't work right. If you don't have a good water source the boiling water will leave deposits from the boiloff. These deposits will cause the solenoid to malfunction and have to be replaced. I have done so several times. This is a hunk of junk.  (Dec. 27, 2010)

* * *

Our contractor told us that if it was by Honeywell, it had to be good. Since installing it three years ago, we have had to replace the main coil FOUR times, we had to change our water system supplying it to use only distilled water (which cost more than the Humidifier did), and have paid to have a complete maintenance done on the unit at the start of every season. Our reward: the 'call service' light comes on within two weeks of every service. To make matters worse, our house required two of these units. They are nothing if not consistent; the red 'call service' light is on 90% of the time for both of them. After our most recent service, our contractor told us that most houses he has installed this product in have experienced similar problems, and he is going to recommend a new unit for us. Our requirement: it cannot be Honeywell, and this product must go where it has longed to be since we first encountered it: the garbage can.  (Jan. 7, 2013)

* * *

Bought two of these about 2 years ago. They are just plain unreliable. We have replaced one of them twice and the other one once. I am getting ready to call the service technicians again. I would say I call them 2-3 times per season. I only call them after I pull out the instructions, clean the tank, go through all the steps, fish around on youtube in case a visual will help, etc.

The most aggravating thing is that we were very clear that we wanted something that required the least maintenance as possible. The True Steam units are marketed as such by Honeywell. Unfortunately, our experience is that these have been the most high maintenance pieces of equipment that I have ever owned.

Next day update...the service company came out and showed us a way to press & hold the empty/reset buttons. Paid for a service call. Came home from work today and the call service light is on again! Stay away from this product.  (Dec. 16, 2012)

* * *

I thought Honeywell was a good name to buy. However, that was not the case with this humidifier. It lasted one year and the heat element died on it. You would think the heat element (being the core of the system) would be a replaceable part, but it is not. Honeywell designed the system that you have to replace the entire unit when it goes bad. My service guy said he has nothing but problems with these units and replaced it with an April Air. The[] best part was Honeywell gave me nothing but problems regarding the so called 5 year warranty, so much so that I simply [gave] up and chucked it in the garbage. Buyers beware.  (Feb. 18, 2012)

* * *

I purchased this unit as part of a $25,000 Geo thermal heat pump installation and even went so far as to insist on Honeywell components where possible because, at least in the past have associated Honeywell with quality.

The unit worked great for 2 years and then started flashing error codes- 6 blinks and no heat, no problem, I have a 5 year warranty!. Now the fun begins.

On the first call to technical support, I was told to clean the unit (even though I have been religious on keeping the unit clean and it had only been a month since it was previously cleaned) and reset it. So I did this. The unit comes on and works for about 6 hours. Then the error codes again, this time 2 blinks and no heat. I call customer service and get someone that speaks broken English that I can barely understand. I explain my situation and ask for either a water sensor be sent to me (2 blinks per the troubleshooting guide= water sensor failure plus all of the internet searches I did point to that as the likely cause) *or* a replacement unit. Each statement they made was ' you need to call a HVAC technician' or, 'Please go thru your installer/contractor for them to come check it out. I pointed out to them several times that there isn't anything in the warranty statement that states that I have to go thru a dealer to have the warranty honored. Its one screw to remove to change the water sensor and the instructions for how to do so is even in the 'homeowners' guide. It[] was a simple fix- I just needed the part. I was put on hold and after 10 minutes or so, the call went dead, I called back, went thru all of the phone options again to get back to the department, explained the whole story again and was told that my only options to have my warranty offered was to:

#1 go thru a dealer (and pay them a service charge)
#2 email the customer service manager, explain my problem, send proof of purchase and plead my case to have the warranty honored directly to me instead

of the dealer.

So I opt for option 2, sent the email, patiently away a response for a week.........
and nothing. So I call back today and am told my email is in the queue and 'Paul'
(apparently the only guy at Honeywell that can honor the warranty directly to me
the homeowner) only works weekdays, I'm in the queue and I need to be patient. I
explained that I had already waited for a week for a response (have been down 2
weeks now). Call went dead.

So when and if, "Paul" ever responds no longer matters as I have pulled this piece
of junk out of my HVAC system and thru it in the trash. The customer service
here is the worst I have ever seen and I am amazed that they are able to get by
trying to force everyone to go thru a dealer to have a warranty honored when
there is nothing within the documented warranty that states this.  (Nov. 16, 2013)

* * *

We had such a unit installed a little more than 2 years ago. Fairly costly, but was
supposed to provide more humidity than a bypass unit while wasting less water as
it is not always on like bypass units are. In that time, we had it fail twice, and both
times the unit actually overflowed with scalding hot water as the limit switch did
not work. The first time it also shorted a[nd] blew up the electrical circuit. We
were told that deposit build-up were to blame, but it is hard to fathom how this
could happen a second time only a few months later. Final result is that I have to
replace gypsum and baseboards that have been damaged. I would seriously advise
anyone to consider other products, and if still going ahead with this (it does
provide adequate humidity when working), make sure any such spill would not be
damaging anything around it, and that no human could be in contact with it when
it overflows. My unit will be going out with the trash and, needless to say but still,
this has been the last honeywell product I will be buying. Ever.  (Nov. 4, 2013)

* * *

This is total junk. I have had it for the past 3 years. It has been a constant source
of problems. Leaks...cracks....replacement sensors........replacement
solenoids....everything goes bad in it.

I have replaced many parts in it and it still malfunctions. The water valve
eventually malfunctions due to deposits.....and I DO NOT have really hard water.
It has a flush function. The boiling tank cracks [eventually] because ...hey Boiling
water + plastic = disaster. I have had my basement flooded by this thing at least
twice...stuck valve...it was so unpredictable that I installed a catch pan underneath
it.

Water level sensors go bad because various plastic parts just crack...due to heat I
presume.

STAY AWAY from this at all costs.  (Dec. 19, 2011)

* * *

I have a TrueSteam [humidifier]. Half of the parts are replaced at least once. It has cost me way more than its price to maintain it, not considering all the time I put into it, all the nights I [went] down to the furnace room to reset it, and days off work to be home to open the door for my tech guy. Don't be deceived by the 5 year warranty, it is just a gimmick to lure you in.  (Feb. 27, 2013)

## CLASS ACTION ALLEGATIONS

### A.    The Class

73.    Plaintiff seeks to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated.   The proposed Class is defined as follows:

> All individuals and entities within Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming that have owned, own, or acquired homes or other residential buildings or structures physically located in the United States, in which an HM506, HM509, and/or HM512 Honeywell TrueSTEAM Humidifier is or has been installed since 2008.   Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns, and successors.   Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

("Multi-State Class"). Additionally or alternatively, Plaintiff brings this case on behalf of himself and all others similarly situated in Massachusetts, as follows:

> All individuals and entities that have owned, own, or acquired homes or other residential buildings or structures physically located in the State of Massachusetts, in which an HM506, HM509, and/or HM512 Honeywell TrueSTEAM Humidifier is or has been installed since 2008.   Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns, and successors.   Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

("Massachusetts Class").

74.     Plaintiff reserves the right to re-define the Multi-State Class and/or Massachusetts Class (collectively "the Classes") prior to class certification.

**B.     Numerosity**

75.     The members of the proposed Classes are so numerous that joinder of all members is impracticable.

76.     The precise number of Class members is unknown at this time; as such information is in the exclusive control of Defendant.  However, due to the nature of the trade and commerce involved, upon information and belief, the proposed Classes are comprised of at least thousands of consumers.

**C.     Common Questions of Law and Fact**

77.     Numerous questions of law and fact are common to Plaintiff and the Class members, and predominate over any individual questions.  These legal and factual questions include, but are not limited to:

a.   Whether Honeywell TrueSTEAM humidifiers are defective in that they fail prematurely and are not suitable for use for the length of time advertised, marketed and warranted;

b.   Whether Honeywell TrueSTEAM humidifiers are defectively designed and/or manufactured;

c.   Whether Defendant owed a duty to Plaintiff and the Classes to exercise reasonable care in the design, manufacture and marketing of its Honeywell Humidifiers;

d.   Whether Honeywell knew or should have known of the defective nature of the TrueSTEAM humidifiers;

e.   Whether Defendant failed to warn consumers about the reasonably foreseeable dangers associated with use of Honeywell Humidifiers;

f.  Whether Defendant misrepresented or omitted material information regarding the quality of its Honeywell Humidifiers;

g.  Whether the Honeywell TrueSTEAM humidifiers failed to perform in accordance with the reasonable expectations of ordinary consumers;

h.  Whether Honeywell properly instructed consumers about the likelihood of premature failure;

i.  Whether the Honeywell TrueSTEAM humidifiers perform as advertised and warranted or expected by an ordinary consumer;

j.  Whether Honeywell's conduct in marketing and selling its TrueSTEAM humidifiers involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive;

k.  Whether Honeywell engaged in unfair, false, misleading, or deceptive trade practices by placing unconscionable limitations on express and implied warranties associated with TrueSTEAM humidifiers;

l.  Whether the terms of Honeywell's written warranties relating to the Honeywell TrueSTEAM humidifiers were unconscionable or failed of their essential purpose;

m.  Whether Honeywell engaged in unfair, false, misleading, or deceptive trade practices by making false representations regarding the quality of its warranties;

n.  Whether Plaintiff and the Classes are entitled to compensatory, exemplary and statutory damages and the amount of such damages; and

o.  Whether Honeywell should be declared financially responsible for notifying all Class members about the defective humidifiers and for all damages associated with the use of such humidifiers in Class members' homes, residences, building and other structures.

## D.    Typicality

78.    Plaintiff's claims are typical of the claims of the Class members.  Plaintiff and all members of the Classes have suffered damages as a result of the defective humidifiers designed, manufactured, marketed, and sold by Defendant.

**E.     Adequacy of Representation**

79.     Plaintiff will fully and adequately represent and protect the interests of the Classes because he shares common injuries as a result of the singular conduct of Defendant that is or was applicable to all members of the Classes.

80.     Plaintiff has retained counsel with substantial experience in prosecuting nationwide consumer class actions.  Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Classes, and have the financial resources to do so.

81.     Neither Plaintiff nor his counsel have any interests that are contrary to or in conflict with those of the Classes they seek to represent.

**F.     Superiority**

82.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

83.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action.

84.     Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendant and be made whole.

85.     Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants, and further efficient adjudication of Class member claims.

## COUNT 1

**(Breach of Mass. Gen. L. ch. 106, §2-313: Breach of Express Warranty)**

**(On Behalf of All Classes)**

86.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

87.     Defendant marketed and sold its Honeywell Humidifiers into the stream of commerce with the intent that they would be purchased by Plaintiff and members of the Classes.

88.     Defendant expressly warranted that its Honeywell Humidifiers were free from defects in the workmanship or materials for a period of five years from the date of purchase by the consumer.  Defendant's written warranties regarding the quality of the units created express warranties that became part of the basis of the bargain Plaintiff and members of the Classes entered into when they purchased Honeywell Humidifiers.

89.     Defendant breached its express warranties to Plaintiff and the Classes in that Defendant's Honeywell Humidifiers are not free from defects as promised.  Rather, Honeywell Humidifiers are prone to scaling and the buildup of mineral deposits, which can lead to overheating, blockages, overflows, and cracking of components.  Use of Honeywell Humidifiers also can result in clogging of exterior drains and/or mold and fungus growth in and corrosion of the HVAC duct system. These defects prevent the units from performing as warranted, and have caused or are causing damage to adjacent appliances and/or the structures/interiors of Plaintiff's and Class members' homes.

90.     When honored, the express warranty remedy of repair or replacement for Defendant's TrueSTEAM Humidifiers fails of its essential purpose under Mass. Gen. L. ch. 106, § 2-719(2) because Defendant's TrueSTEAM Humidifiers are not repairable and because

Defendant replaced Plaintiff and Class members' defective humidifiers with the same defective products at issue in this action. Furthermore, the limitation on consequential damages is unconscionable under Mass. Gen. L. ch. 106, § 2-719(3) because of the conduct of the Defendant described *supra*.

91.     Defendant has received notice of the breaches of warranty alleged herein by virtue of complaints made by purchasers of its Honeywell Humidifiers. Upon information and belief, Defendant has received scores of claims, complaints and other notices from its consumers advising Defendant of the defects in its Honeywell Humidifiers. In addition, Plaintiff has brought this Complaint to give notice to Defendant of Plaintiff's claims, including breach of express warranties.

92.     Defendant has repeatedly denied, failed to pay in full, or failed to respond to the warranty claims made by Plaintiff and members of the Classes.

93.     As a result, Plaintiff and members of the Classes have suffered actual damages in that they purchased and installed a product that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiff and the Classes to incur significant expense repairing or replacing their humidifiers or the component parts, and repairing damage caused by the defective units to adjacent appliances and/or the structures or interiors of their homes.

94.     Further, the warranties themselves are unconscionable and unenforceable in that they fail to achieve their specified purpose because they do not provide consumers with an adequate remedy for the failure of the Defendant's product.  The warranties do not provide coverage for removal or reinstallation costs or "any loss or damage of any kind, including incidental or consequential damages resulting, directly or indirectly, from any breach of any

warranty, express or implied, or any other failure of this product."   Applying any warranty limitation to avoid the need to reimburse consumers for expenses or damages resulting directly from the defective units would be unconscionable because the Honeywell Humidifiers contain inherent defects that were already existing at the time of purchase; Defendant knew, or was careless in not knowing, about the defects; Plaintiff and members of the Classes could not have discovered such defects at the time of purchase; and purchasers lacked any meaningful choice with respect to the warranty terms.

95.     Defendant breached its express warranties because, as alleged above, Honeywell Humidifiers are not free from defects and Defendant's express warranties fail to achieve their specified purpose.  As a result, Defendant has breached the following state warranty laws:

A.      Alaska Stat. section 45.02.313;

B.      A.R.S. section 47-2313;

C.      A.C.A. section 4-2-313;

D.      Cal. Comm. Code section 2313;

E.      Colo. Rev. Stat. section 4-2-313;

F.      Conn. Gen. Stat. section 42a-2-313;

G.      6 Del. C. section 2-313;

H.      D.C. Code section 28:2-313;

I.      O.C.G.A. section 11-2-313;

J.      HRS section 490:2-313;

K.      Idaho Code section 28-2-313;

L.      810 ILCS 5/2-313;

M.      Ind. Code section 26-1-2-313;

N.      K.S.A. section 84-2-313;

O.      KRS section 355.2-313;

P.      11 M.R.S. section 2-313;

Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.      Miss. Code Ann. section 75-2-313;

S.      R.S. Mo. Section 400.2-313;

T.      Mont. Code Anno. Section 30-2-313;

U.      Neb. Rev. Stat. section 2-313;

V.      Nev. Rev. Stat. Ann. section 104.2313;

W.      RSA 382-A:2-313;

X.      N.J. Stat. Ann. section 12A:2-313;

Y.      N.M. Stat. Ann. section 55-2-313;

Z.      N.Y. U.C.C. Law section 2-313;

AA.     N.C. Gen. Stat. section 25-2-313;

AB.     N.D. Cent. Code section 41-02-30;

AC.     ORC Ann. section 1302.26;

AD.     12A Okl. St. section 2-313;

AE.     Or. Rev. Stat. section 72-3130;

AF.     13 Pa.C.S. section 2313;

AG.     R.I. Gen. Laws section 6A-2-313;

AH.     S.C. Code Ann. section 36-2-313;

AI.     S.D. Codified Laws, section 57A-2-313;

AJ.     Tenn. Code Ann. section 47-2-313;

AK.     Tex. Bus. & Com. Code section 2.313;

AL.     Utah Code Ann. section 70A-2-313;

AM.     9A V.S.A. section 2-313;

AM.     Va. Code Ann. section 59.1-504.2;

AO.     Wash. Rev. Code Ann. section 62A.2-313;

AP.     W. Va. Code section 46-2-313;

AQ.    Wyo. Stat. section 34.1-2-313.

96.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Classes have suffered and will continue to suffer damages and losses in an amount to be determined at trial.

## COUNT 2

**(Breach of Mass. Gen. L. ch. 106, §§ 2-314 & 2-315: Breach of Implied Warranties of Merchantability and Fitness)**

**(On Behalf of the Massachusetts Class)**

97.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

98.    Defendant is a merchant with respect to consumer humidifiers. TrueSTEAM Humidifiers are goods within the meaning of the Uniform Commercial Code as adopted by Massachusetts.

99.    Defendant impliedly warranted to the public and members of the classes that its Honeywell Humidifiers were merchantable and fit for the ordinary purposes for which humidifiers are used.

100.    Defendant designed, developed, manufactured, distributed, marketed, and sold its Honeywell Humidifiers for the purpose of their eventual sale to end users and installation in homes and residential structures.

101.    Plaintiff and the Massachusetts Class relied on Defendant's skill and judgment in selecting Defendant's product to purchase.  Plaintiff the Massachusetts Classes likewise relied upon the promises contained within Defendant's warranties and believed that Honeywell

Humidifiers were free from defects in workmanship or materials and fit for the ordinary purposes for which consumer humidifiers are used.

102.   As a manufacturer of consumer goods, Defendant is precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

103.   Defendant's Honeywell Humidifiers are unfit for the ordinary purposes for which humidifiers are used and are not of merchantable quality, as warranted by Defendants, in that they are prone to scaling and buildup of mineral deposits, which prevents them from performing the ordinary purpose of providing whole-home humidification with minimal maintenance, and which has caused Plaintiff and the Massachusetts Class to sustain damages as alleged herein. Honeywell Humidifiers are further unfit for their ordinary purposes and are not of merchantable quality because they can cause clogging of exterior drains, resulting in flooding, as well as corrosion of and/or mold and fungus growth within HVAC ducts, potentially compromising the structure of the HVAC duct system and/or affecting air quality.

104.   Defendant breached its implied warranties in that Honeywell Humidifiers are defective with respect to design and manufacture.

105.   Defendant's limitations on the duration of its implied warranties are unconscionable and/or fail their essential purpose.  Defendant's Honeywell Humidifiers were defective at the time they were acquired by Plaintiff and members of the Massachusetts Class.

106.   Plaintiff and the Class relied on implied warranties of merchantability made by Defendant concerning the Honeywell Humidifiers and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by Defendant.

107.     Any purported disclaimer or limitation of the implied warranty of merchantability on the part of Defendant is unconscionable and unenforceable because Defendant possessed actual, exclusive knowledge of the defect in its TrueSTEAM Humidifiers at all relevant times alleged herein. Defendant has received notice of the breaches of warranty alleged herein by virtue of complaints made by purchasers of its Honeywell Humidifiers.  Upon information and belief, Defendant has received scores of claims, complaints and other notices from its consumers advising Defendant of the defects in its Honeywell Humidifiers. In addition, Plaintiff has brought this Complaint to give notice to Defendant of Plaintiff's claims, including breach of implied warranties.

108.     But for Defendant's breach of its implied warranties, Plaintiff and the Classes would not have suffered the damages and losses alleged herein. Defendant's conduct entitles Plaintiff and Class members to all remedies available under Mass. Gen. L. ch. 106, §§2-714 and 2-715 in amounts to be determined at trial.

## COUNT 3

### (Strict Products Liability)

### (On Behalf of the Massachusetts Class)

109.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

110.     At all times during the Class period, Defendant was a commercial manufacturer and supplier of the Honeywell Humidifiers at issue in this action.

111.     Defendant intended for its Honeywell Humidifiers to reach, and they did in fact reach, consumers without substantial change in the condition in which they were manufactured and supplied.

112.    Defendant's Honeywell Humidifiers were and are defective, unfit for their intended purpose, and unreasonably dangerous.

113.    Defendant, as a product manufacturer, owes Plaintiff and the Massachusetts Class an independent duty of care to act reasonably in the design, manufacture, and sale of its Honeywell Humidifiers.  Defendant breached that duty because the defective humidifiers fail to perform in accordance with the reasonable expectations of Plaintiff and the Massachusetts Class and, due to scaling and buildup of mineral deposits, are substantially certain to overheat, cause blockages and/or overflow of scalding hot water, experience cracking of components and/or otherwise fail to function as intended. The defective humidifiers also can cause exterior drains to clog and flood, can result in damage to HVAC duct work, and can adversely affect air quality.

114.    The above defects pose an unexpected harm to personal property in that Plaintiff and members of the Massachusetts Class are required to expend money to pay for the repair or installation of a new Honeywell Humidifier, as well as to repair or remedy damage to other property. The necessity of repairing or replacing Defendant's humidifiers multiple times before the expiration of the warranty period far outweighs any benefit associated with the product and fails to meet consumer expectations.

115.    Defendant knew, or should have known, that its Honeywell Humidifiers contained a design or manufacturing defect and were incapable of performing their intended purpose. Nonetheless, Defendant failed to warn, advise, notify, or otherwise instruct consumers about non-obvious risks of use such as overheating, overflowing, cracking, and damages resulting therefrom.

116.    As a direct and proximate result of such design or manufacturing defects and Defendant's failure to warn consumers about the risks associated with use of such defective

humidifiers, Plaintiff and Massachusetts Class members have suffered and will continue to suffer the damages and losses alleged herein in an amount to be determined at trial.

## COUNT 4

### (Negligence)

### (On Behalf of All Classes)

117.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

118.    Defendant owed a duty to Plaintiff and members of the Classes to exercise reasonable and ordinary care in the design, manufacture, quality control, and marketing of its Honeywell Humidifiers.

119.    Defendant breached its duty to Plaintiff and members of the Classes by designing, manufacturing, advertising, selling, and warranting a product that is defective and will fail prematurely, and by failing to take those steps necessary to repair or otherwise discontinue the sale of a defective product to consumers.

120.    Defendant knew, or should have known, that the humidifiers at issue were defective, were incapable of performing their intended purpose, and were not as warranted and represented by Defendant.

121.    Plaintiff and members of the Classes were not aware of the defective nature of the Honeywell Humidifiers when they purchased the units.

122.    As a direct and proximate cause of the foregoing, Plaintiff and the Classes have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

## COUNT 5

**(Negligent Misrepresentation)**

**(On Behalf of All Classes)**

123.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

124.    Defendant had a duty to disclose to Plaintiff and members of the Classes the actual quality and characteristics of the Honeywell Humidifiers.

125.    During the Class period, Defendant negligently and/or carelessly misrepresented, omitted and concealed from consumers material facts relating to the quality and characteristics of Honeywell Humidifiers, including the likelihood that they would develop scaling and mineral deposit buildup, which could cause overheating, overflowing and/or cracking of component parts.  Defendant made such false and misleading statements and omissions on its website, and in its product literature, advertisements, and warranties, with the intention of inducing Plaintiff and members of the Classes to purchase its Honeywell Humidifiers.

126.    Defendant was careless in ascertaining the truth of its representations in that it failed to adequately test the units in their anticipated environments and under conditions that they knew or should have known would lead to premature failure of the units and their component parts.

127.    Plaintiff and members of the Classes were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them in deciding to purchase Honeywell Humidifiers.  Had Plaintiff and members of the Classes been aware of the true nature of the Honeywell Humidifiers, they would not have purchased these defective units.

128.    As a direct and proximate result of Defendant's misrepresentation and omission of material facts, Plaintiff and members of the Classes have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

## COUNT 6

**(Violation of Mass. Gen. L. ch. 93A §§ 2, 9: Unfair and Deceptive Trade Practices Act)**

**(On Behalf of the Massachusetts Class)**

129.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

130.    M.G.L. c. 93A § 2 prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

131.    By engaging in the conduct described herein, Defendant violated and continues to violate M.G.L. c. 93A § 2.

132.    Defendant engaged in unfair or deceptive practices when it (1) represented and warranted its Honeywell Humidifiers as being free from defects in workmanship or materials for a period of five years, and marketed its Humidifiers as requiring "minimal maintenance" and providing "high performance and efficiency" with "easier maintenance than traditional humidifiers" when, at best, it lacked credible evidence to support those claims and, at worst, knew the Humidifiers were unreliable, difficult to maintain, wholly defective, and otherwise were not as warranted and represented by Defendant; (2) failed to disclose to, or concealed from, consumers material facts about the quality, characteristics, and defective nature of its Honeywell Humidifiers, including the likelihood that they would develop scaling and mineral deposit buildup, which could cause overheating, overflowing and/or cracking of component parts; and

(3) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of its Honeywell Humidifiers.

133.    Where, as here, Defendant's unfair, deceptive and unconscionable practices have caused similar injury to numerous persons similarly situated, Plaintiff is entitled to bring the action on behalf of himself and similarly injured and situated persons.  M.G.L. c. 93A § 9(2).

134.    As a direct and proximate result of Defendant's deceptive, unfair and unconscionable practices, Plaintiff and the Massachusetts Class have suffered actual harm and seek recovery as provided in M.G.L. c. 93A § 9, including but not limited to all damages recoverable at law and attorney's fees and costs.

135.    Pursuant to the requirements of M.G.L. 93A § 9(3), 30 days prior to filing this Complaint, Plaintiff sent a demand Letter to Honeywell describing the unfair and deceptive practices alleged herein and the injury suffered by Plaintiff and the Massachusetts Class. Honeywell declined to make a settlement offer in response thereto.

## COUNT 7

### (Unjust Enrichment)

### (On Behalf of All Classes)

136.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

137.    Substantial benefits have been conferred upon Defendant by Plaintiff and members of the Classes by purchasing Honeywell Humidifiers, and Defendant has knowingly and willingly accepted and enjoyed such benefits.

138.    Defendant either knew or should have known that the payments rendered by Plaintiff and members of the Classes were given and received with the expectation that the

Honeywell Humidifiers would perform as represented and warranted.  For Defendant to retain the benefit of the payments under these circumstances is inequitable.

139.    Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to Plaintiff and the Classes.

140.    Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

141.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the Classes are entitled to restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

**COUNT 8**

**(Injunctive and Declaratory Relief)**

**(On Behalf of All Classes)**

142.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows:

143.    Plaintiff, on behalf of himself and putative Class members, seeks a Court declaration of the following:

        a.    All Honeywell TrueSTEAM humidifiers with model numbers HM506, HM509, and HM512 have defects which cause them to fail, resulting in damage to property and necessitating the repair, removal and/or replacement of the units;

    b.      Honeywell Humidifiers have a defect in workmanship and material that causes failures;

    c.      Defendant knew or was negligent in not ascertaining the truth about the defects in its Honeywell Humidifiers;

    d.      Defendant shall re-audit and reassess all prior warranty claims on Honeywell Humidifiers, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

    e.      Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to pay for damage caused by its defective humidifiers and to replace those units.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and respectfully requests that this Court:

1. Award damages, including compensatory, exemplary, and statutory damages to Plaintiff and all members of the Classes;

2. Award Plaintiff and the Classes actual damages sustained or treble damages;

3. Grant restitution to Plaintiff and members of the Classes and require Defendant to disgorge its ill-gotten gains;

4. Award injunctive and declaratory relief, as claimed herein;

5. Award Plaintiff and the Classes punitive damages;

6. Award Plaintiff and the Classes their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

7. Award such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  May 21, 2014.                           Respectfully submitted,


                                    _/s/Erica Mirabella___
                                    Erica C. Mirabella (Bar No. 676750)
                                    MIRABELLA LAW LLC
                                    132 Boylston Street, 5th Floor
                                    Boston, Massachusetts 02116
                                    Telephone: (617) 580-8270
                                    Fax: (617) 583-1905
                                    emirabella@gnemlaw.com

                                    Charles J. LaDuca
                                    Bonnie J. Prober
                                    CUNEO GILBERT & LADUCA, LLP
                                    8120 Woodmont Avenue, Suite 810
                                    Bethesda, Maryland 20814
                                    Telephone: (202) 789-3960
                                    Fax: (202) 789-1813
                                    bprober@cuneolaw.com
                                    charles@cuneolaw.com

                                    Clayton Halunen
                                    Melissa W. Wolchansky
                                    HALUNEN & ASSOCIATES
                                    1650 IDS Center
                                    80 South Eighth Street
                                    Minneapolis, MN 55402
                                    Telephone:  (612) 605-4098
                                    Fax:  (612) 605-4099
                                    halunen@halunenlaw.com
                                    wolchansky@halunenlaw.com

                                    Robert K Shelquist
                                    LOCKRIDGE GRINDAL NAUEN PLLP
                                    Suite 2200
                                    100 Washington Avenue South
                                    Minneapolis, Minnesota 55401

Telephone: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com

Michael A. McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: (415) 568-2555
Fax: (415) 576-1776
mmcshane@audetlaw.com

*Counsel for Plaintiff Charles Leach*